# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

**MEMO ENDORSED**

March 7, 2019

**BY ECF**

Hon. Katherine P. Failla, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**    *Lopez v. Spice Grill, LLC, et al.*
                <u>Case No. 18-CV-4967 (KPF) (KNF)</u>

Dear Judge Failla,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this correspondence, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

      **I.**    ***The Need for the Court's Approval of the Agreement***

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.     *Plaintiff's Claims for Unpaid Wages*

Defendants own and operate a restaurant located at 48 West 48th Street, New York, New York, (hereinafter, the "Restaurant"). Defendants originally hired plaintiff, Jose Lopez, in or about 2013 to work at the Restaurant in both tipped and non-tipped capacities as a porter, stock person, and food delivery worker. Mr. Lopez estimates making approximately fifteen (15) to twenty (20) deliveries per day, with the rest of his work shift being spent inside the Restaurant.

Mr. Lopez alleges working in those capacities for approximately one (1) year before leaving sometime in 2014. According to Mr. Lopez, the defendants re-hired him about one (1) year later in or about 2015 to work in the same capacities. Mr. Lopez alleges working at the Restaurant for another two (2) years and eight (8) months when his employment came to a final conclusion on or about May 7, 2018. Thus, in total, plaintiff alleges working approximately three (3) years and eight (8) months for the defendants.[1]

Defendants dispute plaintiff's alleged period of employment. According to the defendants, no records exist indicating that Mr. Lopez was employed at the Restaurant at any point prior to 2015. While this fact remains in dispute, if the defendants' version of events was proven correct, it would have reduced plaintiff's claims by approximately $17,000.

Mr. Lopez alleges that throughout the entirety of his employment he normally worked six (6) days per week, and his work schedule consisted of ten (10) hours per day Monday through Friday from 11:00 a.m. until 9:00 p.m., and ten (10) hours on Saturday from 10:00 a.m. until 8:00 p.m. thereby working approximately sixty (60) hours per week.[2]

Meanwhile, it is the defendants' position that plaintiff worked five (5) days per week (Monday through Friday) from 11:00 a.m. until 9:00 p.m., and that he received a one (1) hour meal break per day. Thus, it is the defendants' position that Mr. Lopez worked, at most, forty-five (45) hours per week. Plaintiff acknowledges receiving one (1) break per day, but contends that it lasted less than twenty (20) minutes. He also acknowledges receiving one (1) free meal per day. Defendants believe the meal credit of between 3.05 and $3.60 per day (depending on the period of employment) should be deducted from plaintiff's proposed damages.

With respect to his pay, Mr. Lopez alleges that he was paid, in cash, as follows:

- First Year: $450 per week straight time for all hours worked
- First Six (6) Months Upon Return In 2015: $400 per week straight time for all hours worked

---

[1] Plaintiff alleges that neither at the time of his original hire, nor when he was re-hired (or anytime thereafter) did the defendants provide him with a written wage notice that set forth his regular hourly rate and corresponding overtime rate of pay.

[2] Plaintiff was not required to punch a time clock or other time-recording device.

- Last Twenty-Six (26) Months: $420 per week straight time for all hours worked.[3]

According to the defendants, Mr. Lopez was paid $500 per week and, therefore, was always paid above the statutory minimum wage except for a few months in 2018. Defendants further maintain that any shortfall in overtime should be limited to five (5) hours per week, which amounts to approximately $6,000 in unpaid overtime compensation.

During the course of discovery, the defendants produced food delivery orders/receipts. The records show deliveries made by plaintiff Monday through Friday with a total amount of tips for those five (5) days signed off on by plaintiff on Saturdays. Plaintiff contends that he worked on Saturdays, but there were little delivery orders on the weekends due to the midtown location of the Restaurant. Plaintiff claims that he was paid his tips income for the week at the end of his Saturday work shift. In contrast, the defendants' contend the records corroborate their position plaintiff only worked five (5) days per week.

Based on plaintiff's allegations, it is his contention that he is owed approximately $67,400 in unpaid minimum wages and overtime compensation, with an equal amount in liquidated damages.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $30,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) days after the Court approves the terms of the settlement and dismisses the action with prejudice. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

### III.   The Agreement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principle question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between experienced counsel, as well as through two (2)

---

[3] Upon paying Mr. Lopez his cash wages each week, the defendants failed to provide him with a wage statement of any kind.

Hon. Katherine P. Failla, U.S.D.J.
March 7, 2019
Page 4

separate mediation sessions conducted by the Southern District's Annexed Mediation Program. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

In light of the various disputes concerning plaintiff's claims discussed herein, this settlement should be approved. Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. The Restaurant is a small enterprise with extensive overhead expenses, which operates on very small profit margins.

By settling now, plaintiff receives a significant amount of his underlying unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, he made the decision to accept the defendants' offer.

### IV. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after our initial $500 in costs (filing fee and service) is deducted. Therefore, plaintiff's counsel seeks $9,832 in fees, plus $500 in costs for a total of $10,332. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS

Hon. Katherine P. Failla, U.S.D.J.
March 7, 2019
Page 5

134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Indeed, a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage of the fund method in this District, particularly where it is pursuant to a previously negotiated retainer agreement." *Montenegro v. NMN Food LLC*, No. 18 Civ. 3153, 2018 WL 6618372, at *2 (S.D.N.Y. Dec. 18, 2018); *see also Sanchez v. Venky's Food Corp.*, No. 18 Civ. 1916, 2018 WL 6618373, at *2 (S.D.N.Y. Dec. 18, 2018); *Haddad v. Daniels*, No. 17 Civ. 8067, 2018 WL 6713804, at *1 (S.D.N.Y. Dec. 17, 2018); *Pacheco v. Shree Laxmi Restaurant Inc.*, No. 17 Civ. 3165, 2018 WL 6618439, at *1 (S.D.N.Y. Dec. 17, 2018); *Avila v. 1134 Madison Avenue Restaurant Corp.*, No. 17 Civ. 2382, 2018 WL 6538182, at *1 (S.D.N.Y. Nov. 20, 2018); *Rosario v. MCS Properties LLC*, No. 17 Civ. 5573, 2018 WL 6538183, at *1 (S.D.N.Y. Nov. 20, 2018).[4]

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Eli Bronner, Esq. (by ECF)

---

[4] Even if analyzed under the lodestar method, counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have previously been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

Application GRANTED. The Court is in receipt of the parties' settlement agreement. The Court has reviewed the proposal in light of *Cheeks* v. *Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), *Lopez* v. *Nights of Cabiria*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky* v. *Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair.

The Court notes that the attorneys' fees, provided for in Section IV of the settlement agreement, were calculated using the percentage method and represent one third of the total settlement amount. While the Court finds those fees to be reasonable, the Court does not make any finding as to the reasonableness of counsel's hourly rate. Accordingly, the settlement is approved, and the Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Court will also so-order separately the stipulation of dismissal submitted by the parties.

Dated:    March 7, 2019
          New York New York

SO ORDERED.

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE